# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2813

OLEKSANDR BOYANIVSKYY,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A78-110-767

ARGUED NOVEMBER 29, 2005—DECIDED JUNE 9, 2006

Before MANION, WILLIAMS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Oleksandr Boyanivskyy, a Ukrainian by ethnicity and citizenship, sought asylum in the United States, claiming the police in Ukraine persecuted him because of his marriage to a Jewish woman. He traveled from Ukraine to Mexico, then made two failed attempts to enter the United States illegally. After his second attempt, the Immigration and Naturalization Service[1] placed him into removal (deportation) proceedings. An immigration judge held that Boyanivskyy was remov-

---

[1] The INS has since been subsumed into the newly created Department of Homeland Security.

able and not entitled to asylum or withholding of removal, and also not entitled to "deferral of removal" under the Convention Against Torture ("CAT").[2] The Board of Immigration Appeals ("BIA") adopted the immigration judge's decision without opinion.

Boyanivskyy raises several issues in his petition for review; we need address only one. He argues that the immigration judge denied him a fair hearing by excluding key evidence supporting his persecution claim. We agree that Boyanivskyy's immigration hearing was statutorily insufficient because the immigration judge excluded critical material evidence bearing directly on his claim of persecution. We therefore grant his petition for review, vacate the BIA's decision, and remand for further proceedings.

## I.  Background

Boyanivskyy first attempted to cross from Mexico into the United States on February 13, 2000. United States border agents were not fooled by the photo-altered Austrian passport he showed them and they sent him back to Mexico. On February 24, 2000, Boyanivskyy tried to cross the border again, this time showing up with no documentation at all and telling border agents he lost his papers in Mexico. Border agents interviewed Boyanivskyy at some length and generated several documents relating to Boyanivskyy's

---

[2]  The immigration judge's decision denied Boyanivskyy "deferral of removal" under the Convention Against Torture, but the applicable form of relief—and the relief Boyanivskyy sought—is "withholding of removal" under the Convention. "Deferral of removal" applies if an alien is statutorily ineligible for withholding because he has committed certain crimes or presents a danger to the security of the United States. 8 C.F.R. §§ 208.16(c)(4), 208.17(a). There is no suggestion Boyanivskyy is subject to mandatory denial of withholding of removal.

second attempted entry. These documents contain internal inconsistencies and errors that weaken their reliability, but two of them indicate Boyanivskyy falsely claimed to be a United States citizen during his attempted entry on February 24. Boyanivskyy denies that he ever claimed United States citizenship.

A border agent specifically asked Boyanivskyy if he had any "fear or concern about being returned" to Ukraine. He answered: "Yes. I fear to go back because I can not feed my family; I can not earn enough money to feed my family." When the agent followed up by asking whether he had any concerns "[o]ther than economic concerns," Boyanivskyy simply repeated his financial worries: "Yes. My salary in Ukraine was fifteen dollars per month. I could not support my family with the amount of money that I made." During the entire February 24 interview, Boyanivskyy never mentioned anything about being persecuted on account of his marriage to a Jewish woman.

The government initiated removal proceedings against Boyanivskyy that culminated in an immigration hearing that began on October 31, 2002, and continued on January 6 and 8, 2004. At the hearing Boyanivskyy conceded he was removable because he lacked the required entry documents. The immigration judge also found Boyanivskyy was removable for falsely claiming United States citizenship during his second attempt to enter the country. The remainder of the hearing focused on Boyanivskyy's effort to persuade the immigration judge to grant him asylum, withholding of removal, or relief under the CAT because he had been persecuted in Ukraine on account of his marriage to a Jewish woman and would face further persecution if returned.

Boyanivskyy planned to show a likelihood of persecution through his own testimony about past persecution he had suffered, including several violent beatings; the testimony

of Dr. Jeffrey Burds, an expert on Ukrainian country conditions; and the testimony of two of his former neighbors in Ukraine, Igor Zarichnyak and Vasyl Yakovishak. Boyanivskyy provided advance notice of the substance of these witnesses' prospective testimony by submitting a prehearing affidavit from Dr. Burds and unsworn written statements from Zarichnyak and Yakovishak. Dr. Burds's nineteen-page affidavit discussed Ukrainian anti-Semitism in detail and concluded that Boyanivskyy's account of the persecution he faced for marrying a Jewish woman "directly conform[s] to patterns of dramatically escalating anti-Jewish and anti-Russian violence throughout Ukraine since November 1991, when Ukraine declared independence from the former Soviet Union." Based on his numerous visits to Boyanivskyy's hometown of Ivano-Frankivsk, Burds found Boyanivskyy's version of events "probable and persuasive." He also noted the "systematic failure of the Ukrainian government to prosecute crimes committed against ethnic Russians and Jews."

Lay witnesses Zarichnyak and Yakovishak would have testified to the ill treatment Boyanivskyy and his wife, Ivanna, endured in Ivano-Frankivsk. Zarichnyak's statement gave a general description of the harassment and discrimination Boyanivskyy suffered from the time he married Ivanna; it also said Ivanna had endured anti-Semitic discrimination all her life. Yakovishak's statement likewise described the verbal abuse, threats, and insults Boyanivskyy and his wife experienced in Ivano-Frankivsk. He also indicated in his statement that while driving home on the evening of September 21, 1998, he witnessed six men beating Boyanivskyy "in the vicinity of the station." (The context suggests he meant the police station.) According to his written statement, Yakovishak recognized at least one of the attackers as an Ivano-Frankivsk police officer, though the man wore civilian clothing. Yakovishak says he found Boyanivskyy lying unconscious on the ground and called an ambulance to take him to the hospital.

Boyanivskyy testified at his hearing that he experienced persecution in Ivano-Frankivsk beginning at the time of his marriage to Ivanna in September 1997. He is Orthodox Christian; Ivanna is Jewish. The worst of what Boyanivskyy described were three severe beatings he suffered in September 1998, and May and December 1999. In September 1998, Boyanivskyy reported to police that his car had been stolen. On September 21, about ten days after he reported the stolen car, the police asked Boyanivskyy to come to the station to receive a report indicating the case would be closed because they deemed it a "non-criminal act."

Boyanivskyy said he reported as requested, and shortly after he left the police station, six men in civilian clothing assaulted him. The attackers made it clear they knew he had reported his car stolen and that he was targeted for attack because he was married to a Jewish woman. They repeatedly called Boyanivskyy and his wife "kikes" while they punched and kicked him. The beating left him with a concussion, a dislocated jaw, bruised ribs, and eyes that were swollen shut. Boyanivskyy recalled that his friend Yakovishak called an ambulance that took him to a hospital where he remained for fifteen days. For a week and a half, Boyanivskyy had trouble walking. He could not say for certain whether his attackers were police officers, but he suspected they were at least connected with the police because they knew his car had been stolen and the attack occurred shortly after he had been called to the police station.

The second beating came on May 12, 1999, as Boyanivskyy walked home from work. Three men attacked him and told him he could not "have kids with a kike." Ivanna was five months pregnant at the time. This assault was so violent that Boyanivskyy was hospitalized for over a month with injuries ranging from a brain hematoma to a dislocated collar bone.

Ivanna gave birth to the Boyanivskyys' first child, a son, in September 1999, and they began receiving telephone death threats from unidentified callers soon after. The callers made it clear they disapproved of the mixed marriage and were particularly incensed about the couple having children. Boyanivskyy had not reported either the September 1998 or the May 1999 beating to police—he feared notifying the police would only exacerbate his problems—but in November 1999 he submitted a written request asking the police to investigate the death threats. Boyanivskyy explained that despite his concern that the police might retaliate against him for reporting the threats, he feared greatly for his son's safety and did not know what else to do, so he filed the request with the police. The Ivano-Frankivsk police opened a criminal investigation, but there is no evidence that any suspects were arrested or prosecuted.

Boyanivskyy suffered a third assault the next month, in December 1999. As he left his workplace, two men confronted him and one threatened him with a gun, pointing it between his eyes. The men wore civilian clothes, but Boyanivskyy recognized the man with the gun as a "militia" man whom he had seen many times wearing a police uniform and patrolling the train station. The man with the gun told Boyanivskyy he would kill him because he had been "warned on several occasions" yet he "continue[d] living with a kike" and had a child with her. He then struck Boyanivskyy in the head with the gun, causing great pain and swelling. It is unclear whether Boyanivskyy was hospitalized following this incident, but he reported seeing a doctor daily for about two weeks. He says his doctor x-rayed his head, put him on an "IV," and gave him "injections" and medication. The record contains medical documentation verifying Boyanivskyy's treatment for serious injuries after each of the three beatings. Boyanivskyy left Ukraine the next month, January 2000, and made his failed attempts to enter the United States one month after that.

Boyanivskyy's three witnesses, Dr. Burds, Zarichnyak, and Yakovishak, had all been available to testify—either in person or by telephone—on the first two days of the hearing (October 31, 2002, and January 6, 2004). But by the end of the day on January 6, the hearing had only just progressed to the point where their testimony would appropriately fit. Boyanivskyy's counsel asked the immigration judge to continue the hearing to a date on which his witnesses could again be available, but the judge insisted on resuming the hearing on January 8, a date when all three witnesses were unavailable. According to Boyanivskyy's counsel, when Boyanivskyy finished testifying on January 8, the immigration judge told him he would be resting his case because the judge was ready to render a decision. Counsel reports a "heated argument" ensued over whether a continuance was necessary for Boyanivskyy to present his corroborating witnesses. The transcript strangely contains none of this "argument" but simply says "OFF THE RECORD." Once back on the record, the immigration judge made the following contradictory remarks: "All right. It's my understanding the parties have rested. The respondent would like to call another witness. I am denying that request, Mr. Kocol [Boyanivskyy's counsel]. The respondent would rest."

The immigration judge then rendered an oral decision denying all relief sought by Boyanivskyy and ordering him removed from the country. This decision flowed from the judge's finding that Boyanivskyy's testimony lacked credibility. The immigration judge cited the following reasons for the adverse credibility determination: Boyanivskyy's failure to mention any marriage-related persecution to the border agents who interviewed him on February 24, 2000; his denial that he falsely claimed United States citizenship; and his testimony that he filed a report with the police when his family received death threats after the birth of his son, which the judge perceived as irreconcilable with Boyanivskyy's professed fear of the police.

The immigration judge stated he would receive Dr. Burds's affidavit "for the truth of the matter asserted," but then completely disregarded it, finding the expert's opinion "lost on this case" because—in the judge's view, at least—the expert's affidavit simply assumed Boyanivskyy's testimony was true. The immigration judge also gave no weight to the unsworn prehearing statements of Zarichnyak and Yakovishak, concluding that their testimony would be worthless. He dismissed Zarichnyak's statement as incredible because it referred to an additional run-in Boyanivskyy had with the "militia" that Boyanivskyy had not mentioned in his own testimony (perhaps because this brush with the militia did not result in his hospitalization). As far as we can tell, the immigration judge discredited Yakovishak's statement solely because it corroborated Boyanivskyy's account of his first severe beating, an account the judge had already deemed incredible.

## II.  Analysis

When the BIA affirms an immigration judge's decision without opinion, we review the immigration judge's decision as the final agency determination. *Georgis v. Ashcroft*, 328 F.3d 962, 966-67 (7th Cir. 2003). The procedural sufficiency of an immigration hearing is a legal question, which we review de novo. *See Kerciku v. I.N.S.*, 314 F.3d 913, 917 (7th Cir. 2002).

Boyanivskyy argues that the immigration judge's refusal to continue his hearing to enable his three witnesses to testify prejudiced his claims for asylum and withholding of removal by excluding critical corroborating evidence in

support of his persecution claim.[3] The government questions our jurisdiction to review this decision because 8 U.S.C. § 1252(a)(2)(B) strips courts of jurisdiction to review denials of discretionary immigration relief. A decision on a motion to continue an immigration hearing is discretionary and generally falls within this door-closing provision. *Benslimane v. Gonzales*, 430 F.3d 828, 831-32 (7th Cir. 2005); *Subhan v. Ashcroft*, 383 F.3d 591, 595 (7th Cir. 2004). But where the denial of a continuance operates to nullify some statutory right, *Subhan*, 383 F.3d at 595, or leads inescapably to a substantive adverse decision on the merits of an immigration claim, *Benslimane*, 430 F.3d at 832, we retain jurisdiction despite § 1252(a)(2)(B)'s restrictions. "An immigration judge cannot be permitted, by arbitrarily denying a motion for a continuance without which the alien cannot establish a ground on which Congress has determined he is eligible to seek to remain in this country . . . to thwart the congressional design." *Benslimane*, 430 F.3d at 832.

---

[3] Boyanivskyy would qualify for asylum by showing "a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion" if returned to his country of origin. 8 U.S.C. § 1101(a)(42); 8 C.F.R. § 208.13(a). To be eligible for withholding of removal under federal immigration law, he must show that his "life or freedom would be threatened" in Ukraine on account of those same factors. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b). He is eligible for withholding of removal under the Convention Against Torture ("CAT") if he shows it is more likely than not that if removed to Ukraine, he will be subject to torture. 8 C.F.R. § 208.16(c)(2). "Torture" is defined in relevant part as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 208.18(a)(1). His CAT claim requires government involvement or acquiescence in torture.

To the extent that the immigration judge's denial of a continuance had the substantive effect of defeating Boyanivskyy's ability to establish his claims for relief, his case resembles *Subhan* and *Benslimane*. We proceed then to the merits of Boyanivskyy's claim that the immigration judge wrongly denied his request for a continuance. He couches his argument in terms of a denial of due process. This formulation is understandable since our cases have sometimes applied due process principles to evaluate claims that an immigration judge has denied an alien an adequate opportunity to present evidence in support of his claim. *See, e.g.*, *Kerciku*, 314 F.3d at 917 (also noting the alien's statutory rights to present evidence under 8 U.S.C. § 1229a(b)(4)(B)); *Kuciemba v. I.N.S.*, 92 F.3d 496, 501 (7th Cir. 1996); *Shahandeh-Pey v. I.N.S.*, 831 F.2d 1384, 1389 (7th Cir. 1987). But "[n]on-constitutional arguments always come first; constitutional contentions must be set aside until their resolution is unavoidable." *Rehman v. Gonzales*, 441 F.3d 506, 508 (7th Cir. 2006) (citing *N.Y. Trans. Auth. v. Beazer*, 440 U.S. 568, 582-83 (1979)); *see also Djedovic v. Gonzales,* 441 F.3d 547, 550 (7th Cir. 2006).

Boyanivskyy argues that the immigration judge's arbitrary refusal to continue the hearing to a day when his witnesses were available denied him the opportunity to present critical evidence in support of his claims for relief. His right to a reasonable opportunity to present all relevant evidence at an impartial hearing is protected by statute, 8 U.S.C. § 1229a(b)(4)(B),[4] and regulation, 8 C.F.R. § 1240.1(c),[5] so we evaluate the immigration judge's action

---

[4] 8 U.S.C. § 1229a(b)(4)(B) provides, in relevant part, that in immigration hearings "the alien shall have a reasonable opportunity . . . to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government."

[5] 8 C.F.R. § 1240.1(c) says: "The immigration judge shall receive

(continued...)

for compliance with these statutory and regulatory provisions rather than constitutional due process. We would reach the constitutional question only if Boyanivskyy complained that the procedures outlined in the statutes and regulations were constitutionally deficient. *Rehman*, 441 F.3d at 509; *Djedovic*, 441 F.3d at 550. He makes no such claim.

Boyanivskyy's witnesses were available to testify during the first two days of his immigration hearing, but the pace of the proceedings kept them from giving their testimony. Although Boyanivskyy made it clear he anticipated the need for his witnesses to testify during the third day of the hearing, the immigration judge inexplicably chose to continue the hearing to January 8, a day on which he knew the witnesses would be unavailable. When the hearing resumed on January 8, the immigration judge denied Boyanivskyy's motion for a continuance and declared that "[t]he respondent would rest" without his corroborating witnesses. This left Boyanivskyy himself as his only witness. The judge then rendered an oral decision denying all forms of relief based on his conclusion that Boyanivskyy's testimony lacked credibility. The immigration judge held that because Boyanivskyy's story was not believable, there was no need to hear his other witnesses. This was error.

When an immigration judge finds an alien's testimony incredible, the alien carries the burden of explaining any discrepancies or introducing credible corroborating evidence. *Capric v. Ashcroft*, 355 F.3d 1075, 1086 (7th Cir. 2004). "Without such an explanation or corroboration . . . the applicant cannot meet his burden of proof and his

---

[5] (...continued)
and consider material and relevant evidence, rule upon objections, and otherwise regulate the course of the hearing."

asylum claim will fail." *Balogun v. Ashcroft*, 374 F.3d 492, 500 (7th Cir. 2004). The burden was squarely on Boyanivskyy to come forward with corroborating evidence to prove he had actually suffered persecution because of his marriage to a Jewish woman. The testimony of Dr. Burds, Zarichnyak, and Yakovishak could not have been more central to his claim.

The immigration judge continued the hearing to a date when he knew Boyanivskyy's witnesses were unavailable and then declared the hearing at an end, denying a further continuance, without which he knew Boyanivskyy could not present essential corroborating evidence. By doing so, the judge denied Boyanivskyy the opportunity to present evidence on his own behalf, 8 U.S.C. § 1229a(b)(4)(B), and refused to "receive and consider material and relevant evidence." 8 C.F.R. § 1240.1(c). Although the immigration judge purported to receive Dr. Burds's affidavit "for the truth of the matter asserted," he completely discredited it as "lost on this case" because he had already determined Boyanivskyy's testimony to be incredible. The prehearing statements of Zarichnyak and Yakovishak were similarly dismissed. The immigration judge thus eliminated Boyanivskyy's opportunity to present his corroboration witnesses *precisely because* they were corroboration witnesses—that is, because their testimony would have been consistent with testimony the judge disbelieved. But "[a]n applicant's right to present testimony to support his or her claims is not nullified by adverse considerations, including negative credibility findings, that may weigh against, or ultimately doom, the applicant's case in the judge's eyes." *Kerciku*, 314 F.3d at 919.

These errors by the immigration judge entitle Boyanivskyy to relief only if he can show prejudice. *Rehman*, 441 F.3d at 509. We have no difficulty concluding that his case was harmed by the exclusion of his corroboration witnesses. Dr. Burds would have testified that

Boyanivskyy's testimony about anti-Semitic persecution was all too typical in Ukraine. Contrary to the immigration judge's suggestion that Dr. Burds's opinion simply assumed the veracity of Boyanivskyy's story, the expert's affidavit indicates that he found Boyanivskyy's account "probable and persuasive" only after finding it consistent with the current state of anti-Semitic hostility and persecution in Ukraine. Zarichnyak and Yakovishak would have testified to their personal knowledge of the anti-Semitic abuse endured by Boyanivskyy and his wife. Yakovishak in particular would have delivered highly relevant corroborative testimony about the circumstances of the first attack Boyanivskyy described, when he was set upon and beaten unconscious by six men outside the police station. If the testimony of these three witnesses had been heard and properly considered, the outcome of Boyanivskyy's hearing may well have been different. The immigration judge reached his decision based on an underdeveloped record—underdeveloped because the judge deprived Boyanivskyy of his statutory and regulatory right to present material evidence essential to his persecution claim.

Accordingly, we GRANT the petition for review, VACATE the BIA's decision, and REMAND this case for further proceedings consistent with this opinion.

A true Copy:

        Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*