# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 05-2662

VATCHAREE PRONSIVAKULCHAI,

*Petitioner,*

*v.*

ALBERTO R. GONZALES,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A-79-190-556

ARGUED MARCH 29, 2006—DECIDED AUGUST 29, 2006

Before BAUER, KANNE, and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* Vatcharee Pronsivakulchai, a citizen of Thailand, was arrested in Bangkok in October of 2000 based on a United States warrant for drug trafficking. She spent seven months in a Thai prison and was then extradited to the United States to face trial. Once in United States' custody, Pronsivakulchai assisted the Drug Enforcement Administration ("DEA") in a criminal investigation by writing letters to Thai gang members she had met in prison as well as other known gang members from her hometown, Ranong. At the direction of a DEA agent, her letters falsely stated that she had won her case, she was out of jail, and she was interested in buying narcotics. Maintaining her innocence to the charges against

her, Pronsivakulchai refused a plea deal with the government but agreed to assist them in their investigation. On the day she was to stand trial, March 15, 2004, the government moved to dismiss the charges against her. The government now seeks to deport Pronsivakulchai back to Thailand.

Pronsivakulchai filed applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). She testified that if she is returned to Thailand, she will be killed by the gang members that she contacted while serving as an informant for the DEA. At the immigration hearing, the government argued that Pronsivakulchai was ineligible for asylum and withholding of removal because they had reason to believe she had committed a crime in Thailand. Agreeing with the government, the Immigration Judge ("IJ") denied Pronsivakulchai's application. The IJ concluded that there was reason to believe that Pronsivakulchai had committed a non-political crime outside of the United States, which would make her ineligible for asylum or withholding of removal. The BIA affirmed and adopted the IJ's opinion. On appeal, Pronsivakulchai argues that the IJ denied her due process because, among other reasons, she was not afforded a reasonable opportunity to present evidence on her behalf and rebut the government's evidence that she had committed a drug trafficking crime in Thailand. She further argues that the IJ erred in finding that she did not qualify for CAT protection. We agree that Pronsivakulchai was denied a fair hearing, and since Pronsivakulchai was not afforded a reasonable opportunity to present evidence on her behalf, we are unable to make a determination as to her eligibility for CAT protection. Thus, we grant her petition for review, vacate the BIA's decision, and remand for further proceedings.

## I.  Background

On April 11, 2000, a United States Magistrate Judge issued a warrant for Pronsivakulchai's arrest. In October of 2000, Pronsivakulchai was arrested in Thailand based on the warrant issued in the United States. She was then incarcerated at Lad Yao prison in Bangkok for seven months until she was extradited to the United States. While she was detained at Lad Yao, she witnessed rampant corruption, such as open narcotics trafficking and guards forcing inmates to pay for their food or for places to sleep. The prison guards also beat her.

On May 7, 2001, she first appeared in a United States District Court for the charges against her. Here, the prosecutors and the DEA contacted her about assisting with a drug trafficking investigation in Thailand. DEA Agent Kirk Meyer asked Pronsivakulchai to write letters to various people she had met in prison whom the DEA believed to be drug traffickers. Pronsivakulchai agreed when the prosecutors and the DEA told her that if she cooperated, they would help her with her case.

Pronsivakulchai wrote in the letters that she had won her case in the United States and offered to buy drugs from these individuals in exchange for cash payments, which the prisoners could use to bribe their way out of Lad Yao. Pronsivakulchai prepared the letters and sent them to Agent Meyer. He in turn sent the letters on to the targeted individuals imprisoned in Thailand.

Agent Meyer then told Pronsivakulchai that he needed her assistance in gathering more information for the investigation. Pronsivakulchai agreed and asked her sister, who was still in Thailand, to help gather more information on the drug traffickers. She testified that in her hometown, many drug traffickers could be identified by real estate and other luxury items they owned. Pronsivakulchai's sister collected the addresses of the homes where it appeared the

drug traffickers lived. Pronsivakulchai then wrote similar letters to these individuals.

Specifically, Pronsivakulchai wrote a letter to Siang Yoksap. She knew that Yoksap was involved in illegal activity because Yoksap had previously attempted to sell Pronsivakulchai "protection." Yoksap was a member of the Kon Nakorn gang, and was killed three to four weeks after Pronsivakulchai gave her letters to Agent Meyer to send to Thailand. Shortly after Yoksap's death, "Cheet," a member of the Kan Nakorn gang, came to Pronsivakulchai's sister's home in Ranong looking for Pronsivakulchai. Cheet visited her sister many times to inquire about Pronsivakulchai's whereabouts. Pronsivakulchai believed that these persistent inquiries stemmed from the letters she wrote Yoksap as part of the DEA investigation.

Pronsivakulchai applied for asylum because she believes she will be killed by the individuals she "informed on," specifically the Thai gangs or drug dealers. She explained that there is rampant corruption in Thailand and the gangs and police often share information and work in conjunction with one another. Since the gangs operate both in and outside of prison, Pronsivakulchai believes that she will likely be killed whether or not she is in prison.

In January of 2004, the prosecutor offered Pronsivakulchai a plea deal. She refused to take it because she maintained her innocence. On the day Pronsivakulchai's case was set for trial, the government moved to dismiss the case against her. After spending three and a half years in jail in both Thailand and the United States without being tried for a crime, Pronsivakulchai was turned over to the Department of Homeland Security.

On May 27, 2004, Pronsivakulchai had a master calendar hearing in immigration court. The government argued that Pronsivakulchai was ineligible for asylum because, they

claimed, she was a drug trafficker in Thailand. As evidence, the government submitted a partial and uncertified translation of a Thai warrant. The IJ gave the government another opportunity to obtain a certified translation of the Thai warrant. The IJ also asked for all the documents related to the dismissed criminal case and wanted a DEA agent to testify regarding Pronsivakulchai's help with the DEA's investigation.

The next master calendar hearing took place on July 22, 2004, and for reasons that are not clear to us, the record contains no transcript of this hearing.[1] What we can conclude from the record is that the IJ admitted the translated Thai arrest warrant over Pronsivakulchai's objection. The Thai warrant, which was issued on April 21, 2000, by a police lieutenant colonel, states that it is for the arrest of "Mrs. VATCHAREE whose last name is unknown." Pronsivakulchai said she had never seen the Thai warrant until it was entered as an exhibit in the immigration proceedings against her. Since there is no transcript of this hearing in the record, it is unclear if the government complied with the IJ's request to turn over all the documents against Pronsivakulchai in the United States' dismissed criminal case. It is also unclear from the record whether the DEA agent ever testified regarding Pronsivakulchai's assistance in the drug trafficking investigation.

Pronsivakulchai finally had a merits hearing on her application for asylum, withholding of removal, and protection under CAT, on August 11, 2004. Because it was her first merits hearing, Pronsivakulchai thought she could present evidence refuting the Thai warrant and rebutting

---

[1] Petitioner's counsel explained that they tried several times to secure a transcript of the July 22, 2004, master calendar hearing from both the immigration court and the BIA, but they were unsuccessful.

the government's contention that there was a reason to believe she had committed a non-political crime in Thailand. Pronsivakulchai tried to present this evidence but the IJ refused to consider rebuttal testimony or evidence addressing the government's contention that she was inadmissable under Section 212(a)(2)(c) of the Immigration and Nationality Act ("INA") as someone they believed was trafficking in narcotics, 8 U.S.C. § 1182(a)(2)(C)(I). The IJ made clear that she would not consider testimony addressing Pronsivakulchai's applications for asylum or withholding of removal because she decided that the government had reason to believe that Pronsivakulchai was a drug trafficker, and that foreclosed Pronsivakulchai's eligibility for asylum. To preserve the record, the IJ did allow limited testimony. Pronsivakulchai explicitly denied that she was involved in drug trafficking and testified that she had never bought or sold drugs in Thailand. Pronsivakulchai also testified that she had never been arrested in Thailand other than for the dismissed United States case that led to her extradition and her cooperation with the DEA. Pronsivakulchai also offered several human rights reports, news articles, and affidavits in support of her application.

## II. Analysis

A petitioner's claim that the immigration hearing was procedurally insufficient is reviewed *de novo*. *Boyanivskyy v. Gonzales*, 450 F.3d 286, 291 (7th Cir. 2006). For Pronsivakulchai to prevail on her claim, she must show prejudice such that the IJ's mistake impacted the outcome of the proceedings. *Rehman v. Gonzales*, 441 F.3d 506, 509 (7th Cir. 2006). In this case, the BIA summarily affirmed and adopted the IJ's opinion. Thus, we review the IJ's decision as the final agency determination. *Georgis v. Ashcroft*, 328 F.3d 962, 966-67 (7th Cir. 2003).

The Fifth Amendment entitles aliens to due process of law in deportation proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993). Due process requires that a court afford an applicant a meaningful opportunity to be heard and a reasonable opportunity to present evidence on his or her behalf. *Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 538 (7th Cir. 2005). Moreover, removal proceedings must be fair. *Kerciku v. INS*, 314 F.3d 913, 917, 919 (7th Cir. 2003).

Although Pronsivakulchai frames her argument in terms of a violation of due process, we have recently noted that "[n]on-constitutional arguments always come first; constitutional contentions must be set aside until their resolution is unavoidable." *Rehman*, 441 F.3d at 508. We have cautioned against "leading with an open-ended due process argument" and advised that "[a]liens should stick with claims based on the statutes and regulations unless they believe that one of these rules violated the Constitution or that lacunae in the rules have been filled with defective procedures." *Id.* at 509; *see also Djedovic v. Gonzales*, 441 F.3d 547, 550 (7th Cir. 2006); *Boyanivskyy*, 450 F.3d at 292. Aliens have a statutory and regulatory right to a reasonable opportunity to present evidence. *See* 8 U.S.C. § 1229a(b)(4)(B), 8 C.F.R. § 1240.1(c); *see also Boyanivskyy*, 450 F.3d at 292. Accordingly, we will evaluate Pronsivakulchai's claim that the IJ denied her a reasonable opportunity to present evidence under the applicable statute and regulation rather than constitutional due process. *See Rehman*, 441 F.3d at 509 (reframing a due process argument as one under the statute); *Djedovic*, 441 F.3d at 550 (same); *Boyanivskyy*, 450 F.3d at 292 (reframing a due process argument as one under the statute and regulation).

Pronsivakulchai contends that her rights were violated because the IJ refused to give her a reasonable opportunity to present evidence on her behalf. Specifically, the IJ would not consider Pronsivakulchai's testimony rebutting

the government's claim that there was reason to believe Pronsivakulchai had committed a non-political crime in Thailand. The IJ stated that she would not consider any evidence on Pronsivakulchai's application for asylum or withholding of removal because the IJ had already determined at the master calendar hearing that under Section 212(a)(2)(c) of the INA, Pronsivakulchai was ineligible for asylum.

The problem with this conclusion is that the IJ made her determination before Pronsivakulchai was able to present evidence on her behalf. At the master calendar hearing on July 22, the government proffered the Thai arrest warrant, which only identified the suspect as "Mrs. Vatcharee whose last name is unknown," as its evidence that there was a reason to believe that the Vatcharee in this case had committed a non-political crime in Thailand. Once at the merits hearing on August 11, Pronsivakulchai tried to offer testimony and evidence to rebut the government's claim that she had committed a crime in Thailand but the IJ stopped Pronsivakulchai in her tracks. The IJ pressed Ms. Valenzuela, Pronsivakulchai's counsel, as to why she was continuing with an asylum-based line of questioning. She answered that at the master calendar hearing, the government had raised its claim that there was a reason to believe Pronsivakulchai committed a non-political crime. Ms. Valenzuela was trying to address the surrounding circumstances that led up to what she maintained was a warrant for Pronsivakulchai based on false charges in Thailand. She explained that they were under the impression from the master calendar hearing that Pronsivakulchai would be able to present evidence as to all three forms of relief at her merits hearing. Ms. Valenzuela contended that the IJ had reserved ruling on these determinative issues until the merits hearing so that petitioner could present evidence on her behalf. But the IJ explained that based on her notes she determined she had already made her ruling.

The IJ's refusal to consider Pronsivakulchai's rebuttal evidence denied her an opportunity to be heard and to present evidence on her behalf. *Boyanivskyy*, 450 F.3d at 293. Immigration courts must allow petitioners seeking asylum and withholding of removal a reasonable opportunity to put on their case. *Rodriguez Galicia,* 422 F.3d at 538. Unfortunately, we do not have the transcript of the July 22 master calendar hearing in the record to determine what was admitted and what was explored through testimony. Regardless, Pronsivakulchai should have been given the opportunity at her merits hearing to present evidence and offer testimony to rebut the government's contention that there was a reason to believe she had committed crimes in Thailand. A determination of inadmissibility based on "reason to believe" must be founded on reasonable, substantial, and probative evidence. *Alarcon-Serrano v. INS*, 220 F.3d 1116, 1119 (9th Cir. 2000). Yet, the government offered no explanation for the seemingly unlikely conclusion that the Thai warrant that identifies a "Mrs. Vatcharee whose last name is unknown" is indeed Pronsivakulchai. The IJ herself even characterized the warrant as "not much evidence." We fail to see how the evidence the IJ considered was reasonable, substantial, and probative. *Id.* Accordingly, we find that the IJ violated Pronsivakulchai's statutory and regulatory rights by denying her the opportunity to present evidence and testimony to rebut the Thai warrant and the government's evidence, 8 U.S.C. § 1229a(b)(4)(B), 8 C.F.R. § 1240.1(c). The IJ's finding that Pronsivakulchai was ineligible for asylum under Section 212(a)(2)(c) of the INA certainly impacted the outcome of her hearing, and therefore it was prejudicial.

The government makes much of the fact that Pronsivakulchai conceded that she was inadmissable under the Act and has thus waived the issue of admissibility. But, Pronsivakulchai only conceded she was inadmissable for the

administrative reason that at the time of her asylum application she did not have a valid unexpired immigrant visa, reentry permit, or other valid entry or travel document required by Section 212(a)(7) (A)(i)(I) of the INA, 8 U.S.C. § 1182(a)(7) (A)(i)(I). We are struck by the government's focus on this issue because it disregards how Pronsivakulchai arrived in the United States—by extradition—and the fact that she is still in the custody of the Immigration and Customs Enforcement. As a practical matter, she arrived in the United States after being extradited from Thailand's Lad Yao prison. One can imagine that there was hardly an opportunity afforded to Pronsivakulchai to pop home and retrieve her papers. In fact, prior to Pronsivakulchai's agreement to assist the United States government in its drug trafficking investigation, it seems she hardly had an asylum claim. It was only after she agreed to write letters to known drug dealers and gang members to help the DEA that she developed a fear for her life if returned to Thailand. Considering that she arrived in the United States through extradition processes from a Thai prison, we do not see how the fact that she lacked a proper visa would be a bar to her asylum application. Pronsivakulchai's case is clearly not a typical one, but that does not mean she cannot seek relief under the Act, especially considering her assistance with the DEA's investigation.

Remarkably, at oral argument the government's counsel conceded that Pronsivakulchai was helpful, but not helpful enough. That is, while she agreed to write letters to drug dealers back in Thailand to assist the DEA in its investigation, her assistance did not prove as fruitful as the DEA and prosecutors had hoped. Now, Pronsivakulchai's reward for helping the DEA is to send her back to the Thai prison, where the gang members and drug traffickers that she informed on still reside. As we detailed above, at Pronsivakulchai's first master calendar hearing the IJ requested all the documents regarding the dismissed

criminal case against her. The IJ also requested that a DEA agent testify regarding Pronsivakulchai's role in the investigation. Of course, without the transcript from the July 22 master calendar hearing in the record, we do not know if such testimony was taken. Yet, in the IJ's written opinion she dismissed Pronsivakulchai's cooperation and assistance with the DEA's investigation because Pronsivakulchai did not take the plea agreement. This, together with the IJ's rejection of Pronsivakulchai's rebuttal testimony and evidence, strikes us as fundamentally unfair. *Kerciku,* 314 F.3d at 919. We do not address the issue of whether the evidence as a whole supports the IJ's conclusion. Rather, we address whether Pronsivakulchai received a fair hearing that allowed the IJ's decision to be based on reasonable, substantial, and probative evidence. *Id.* We conclude that Pronsivakulchai was not afforded a fair hearing. Therefore, her case must be remanded.

### III. Conclusion

Accordingly, Pronsivakulchai's petition is GRANTED. We VACATE the BIA's decision and REMAND for proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*