In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2846

HIFZUR REHMAN,

*Petitioner,*

*v.*

ALBERTO R. GONZALES, Attorney General
of the United States,

*Respondent.*

Petition for Review of Orders of the
Board of Immigration Appeals

ARGUED FEBRUARY 23, 2006—DECIDED MARCH 20, 2006

Before EASTERBROOK, RIPPLE, and WOOD, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* In 1977 Zulfikar Ali Bhutto was deposed as Prime Minister of Pakistan. General Zia ul-Haq took over in a coup. Hifzur Rehman was among Zia's subordinate officers. Rehman and his family had been, and remained, friends of the Bhutto family. In 1980 Rehman made remarks at a military meeting that the presiding officer construed as criticism of the Zia government; he was admonished to desist from politics while in military service. When Rehman made these unwelcome statements he was a second lieutenant; he retired in 2002 as a major. Having arrived in the United States on a tourist visa, Rehman sought asylum on the theory that Zia and his successors slowed his advancement through the ranks, kept him under

surveillance, and posted him to remote and undesirable locations. Rehman acknowledged that he had not experienced overt persecution but contended that he was at greater risk once out of uniform. He contends that since his arrival in the United States his wife, who remains in Pakistan, has received telephonic threats. (The record does not show the substance of the threats.)

An immigration judge thought that these events fell well short of persecution entitling an alien to asylum. Rehman does not mount a serious challenge to the agency's decision on the merits. Many military officers (indeed, many employees in civilian life) think that their skills are underappreciated and their careers impeded by jealous rivals or conniving superiors. That is not a form of "persecution." Benazir Bhutto, Zulfikar's daughter, was Prime Minister from shortly after Zia's death in 1988 until 1990, and again from 1993 to 1996. Yet Rehman's military career fared no better when she was in charge than when the Bhuttos' opponents held sway.

Rehman does not point to any evidence implying that friends of the Bhuttos are at risk in contemporary Pakistan. Benazir is in exile, and her husband served a term in prison following conviction on corruption charges, but their political supporters are at liberty. The current government of Pakistan is long removed from the coup that overthrew Zulfikar in 1977. Benazir's tenure ended when her party lost control of parliament, and the current head of government (Pervez Musharraf) has no apparent ax to grind concerning the Bhuttos' friends.

Instead of challenging the decision's substance, Rehman complains that the immigration judge denied him due process of law by curtailing the time allotted to the hearing and interrupting his lawyer's questioning. It is unclear, however, whether we may consider even these limited arguments. The immigration judge rendered his decision on

February 2, 2004, and Rehman had 30 days to seek review by the Board of Immigration Appeals. On the 30th day, however, he filed a motion asking the immigration judge to reconsider. This motion was denied on March 23, and on April 16 Rehman filed two appeals: one from the initial decision of February 2, and the other from the order of March 23.

The Board of Immigration Appeals dismissed the first on February 1, 2005, as untimely, explaining that a motion to reconsider does not affect the time for appeal. While the second appeal was under advisement, Rehman asked the Board to reconsider that decision. On May 26, 2005, the Board entered a decision that (a) denied the motion to reconsider the decision of February 1, and (b) resolved adversely to Rehman, on the merits, his appeal from the immigration judge's decision of March 23. Rehman then filed a petition for judicial review, which is timely only with respect to the May 26 decision—for a motion asking the BIA to reconsider one of its decisions does not toll the time to seek judicial review, *Stone v. INS*, 514 U.S. 386 (1995), and the Board's disposition of February 1 therefore is unassailable.

Despite an order that this court issued before briefing informing counsel that the Board's order of May 26 is the sole administrative action now open to review, most of Rehman's brief proceeds as if this were a direct appeal from the immigration judge's initial decision on February 2, 2004. None of Rehman's arguments rests on any fact that came to light after that date or any new legal development. Yet motions to reconsider—whether made to an immigration judge or to the Board—are not replays of the main event. Reconsideration depends on something new, if not necessarily new factual developments (motions to reopen in immigration practice are strictly limited to such post-decision events, 8 C.F.R. §1003.23(3)) then at least new arguments showing that the IJ or Board overlooked some-

thing important. See 8 C.F.R. §1003.23(2). Rehman does not have any new arguments; he is rehashing old ones.

*Stone* prevents us from deciding whether the Board's order of February 1, 2005, dismissing his direct appeal was a mistake. All we can consider is whether the standards for reconsideration have been met. Yet the lack of new argument or new evidence makes it all but impossible to say that the immigration judge and Board both abused their discretion in declining to reconsider their initial decisions.

Oddly, however, the brief for the agency makes little of these procedural obstacles. Instead counsel has met the due process argument on the merits. The Board itself treated the appeal from the order denying reconsideration just as if it were an appeal from the IJ's initial order of removal. We therefore shall do likewise, without implying that this would be proper had the Board and its advocate invoked the alien's procedural default. Cf. *Pasha v. Gonzales*, 433 F.3d 530 (7th Cir. 2005).

The immigration judge gave Rehman three hours to present his claim and, when counsel's meandering questioning began to fritter away that time, intervened to put matters on track. Rehman contends that these steps violated the due process clause of the fifth amendment. Why counsel should start with the Constitution rather than the statutes and regulations that govern removal proceedings is beyond us. Non-constitutional arguments always come first; constitutional contentions must be set aside until their resolution is unavoidable. See, e.g., *New York Transit Authority v. Beazer*, 440 U.S. 568, 582-83 (1979). Aliens have both statutory, 8 U.S.C. §1229a(b)(4), and regulatory, 8 C.F.R. §1240.1(c), entitlements to present all material evidence at impartial hearings. Any proceeding that meets these requirements satisfies the Constitution as

well. See *Galicia v. Gonzales*, 422 F.3d 529, 538 (7th Cir. 2005); *Nazarova v. INS*, 171 F.3d 478, 482 (7th Cir. 1999).

It would be necessary (and appropriate) to consider constitutional claims only if Congress had provided for kangaroo tribunals (in general) or adopted some specific rule that is open to constitutional doubt. Yet Rehman does not challenge the validity of any of the many statutes and rules of procedure that govern removal hearings. We have remarked before on the tendency of flabby constitutional arguments to displace more focused contentions. See *Magala v. Gonzales*, 434 F.3d 523, 526-27 (7th Cir. 2005). Leading with an open-ended due process argument may divert attention from potentially sound but technical legal points. Aliens should stick with claims based on the statutes and regulations unless they believe that one of these rules violates the Constitution or that lacunae in the rules have been filled with defective procedures.

Reframed in statutory language, counsel's contention is that he lacked "a reasonable opportunity . . . to present evidence on the alien's own behalf". 8 U.S.C. §1229a(b)(4)(B). But if he had been given more time, what additional evidence would he have presented? Counsel offers no specifics, which is a fatal shortcoming. When a court excludes evidence, counsel must make an offer of proof or otherwise alert the tribunal to the substance of what the evidence would have been. Fed. R. Evid. 103(a)(2). That rule does not apply directly to administrative proceedings, but its substance still governs—for courts do not set aside agencies' decisions unless mistakes cause prejudice, and how could we ascertain prejudice without an offer of proof or some substitute? Cf. *Alimi v. Ashcroft*, 391 F.3d 888, 890-91 (7th Cir. 2004). The Board remarked that it had no idea what additional evidence Rehman had been unable to present. Even after the Board's observation, Rehman did nothing to supply what is lacking and tell us

why whatever is missing is material—though we may assume that an affidavit would have sufficed even at this late date, none has been produced. Counsel's appellate brief is maddeningly vague. It is hard to resist the conclusion that there is nothing more to offer.

The immigration judge's questions seem to us designed to keep the hearing focused on material issues, while counsel's questioning implied that he could not distinguish the material from the irrelevant. Rehman has received the hearing to which he is entitled. If this is wrong, and the IJ should have given his lawyer more time, still the record does not afford reason to think that counsel could have used that time to supply material evidence in Rehman's favor. Accordingly, the petition to set aside the Board's orders is denied.

A true Copy:

     Teste:

                                   _____

                              *Clerk of the United States Court of*
                                    *Appeals for the Seventh Circuit*