UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 26, 2006[*]
Decided May 26, 2006

**Before**

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-2850

| | |
|---|---|
| NICHOLAS T. AVELLO,<br>    *Petitioner*, | On Petition for Review of an Order of the<br>Securities and Exchange Commission |
| *v.* | No. 3-10391r |
| SECURITIES AND EXCHANGE<br>COMMISSION,<br>    *Respondent*. | |

**O R D E R**

Nicholas T. Avello is a certified public accountant who was sanctioned with a letter of caution by the National Association of Securities Dealers for submitting inaccurate financial reports. He now petitions for review of an order of the Securities and Exchange Commission upholding the disciplinary action, arguing that rules he was held to have violated do not apply to him, and that, even if they do, the standard by which his conduct was judged was too high. We deny the petition.

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

We briefly sketch the regulatory scheme that led the NASD to focus on Avello.  The NASD, a self-regulated agency registered with the Commission as a national securities association under the Securities and Exchange Act of 1934, *see* 15 U.S.C. § 78o-3(a), adopts rules governing the conduct of its members and enforces compliance with federal securities laws and Commission rules and regulations.  *Otto v. SEC*, 253 F.3d 960, 964 (7th Cir. 2001).  One Commission regulation, known as the net capital rule, requires brokers and dealers to maintain a specified level of net worth to protect their customers from the firm's potential insolvency.  *See* 17 C.F.R. § 240.15c3-1.  A firm's net worth is determined from books, records, and reports that the NASD and Commission require members to keep and submit.  *See* 17 C.F.R. §§ 240.17a-3, 240.17a-5.  Depending on whether the broker or dealer carries or clears transactions or customer accounts, it is required to submit either monthly or quarterly reports known as the Financial and Operational Combined Uniform Single, or FOCUS reports.  17 C.F.R. § 240.17a-5(a)(2).  Under NASD rules, the title of persons responsible for the accuracy of these reports is "Limited Principal—Financial and Operations," otherwise known as a FINOP.  NASD MANUAL, Membership and Registration Rule 1022(b)(2).  A FINOP is "associated with a member," and must be a natural person who is registered with the NASD and has passed a qualifying examination.  *Id*., Rule 1022(b)(1); NASD MANUAL, Bylaws of the NASD, Art. 1(dd).  A FINOP's duties include:

> (A) final approval and responsibility for the accuracy of financial reports submitted to any duly established securities industry regulatory body;

> (B) final preparation of such reports;

> (C) supervision of individuals who assist in the preparation of such reports;

> (D) supervision of and responsibility for individuals who are involved in the actual maintenance of the member's books and records from which such reports are derived;

> (E) supervision and/or performance of the member's responsibilities under all financial responsibility rules promulgated pursuant to the provisions of the Act;

> (F) overall supervision of and responsibility for the individuals who are involved in the administration and maintenance of the member's back office operations; or

      (G) any other matter involving the financial and operational management of the member.

NASD MANUAL, Rule 1022(b)(2).

      Avello contracted to work as a FINOP for Hudson Knight Securities, Inc. (HKS) and remained in that position from 1995 until 1997. During that period the NASD became aware that HKS was experiencing difficulty meeting its required level of net capital and began monitoring HKS. Eventually the NASD determined that the firm had improperly accounted for certain items in its FOCUS reports which, if properly accounted for, would have shown that the firm had conducted business while below its required level of net capital. When the NASD or its Department of Enforcement believes that an associated person has violated rules, regulations, or securities laws, it may request authorization from the Office of Disciplinary Affairs to file a complaint. *Id.*, Procedural Rule 9211. If alleged to have violated a statute or certain NASD rules, a respondent may propose that the NASD's Chief Hearing Officer select a Market Regulation Committee Panelist for a Hearing Panel. *Id.*, Procedural Rule 9221(a)(3). And that's what happened here. In 1998 the Department filed a complaint against Jonathan Webb, the Chairman and half-owner of HKS, and Avello (but did not name the firm itself) that was later vetted before a Hearing Panel.

      The complaint alleged ten causes, only three of which implicated Avello. The charges against Webb alone included allegations that HKS, acting through him, effected securities transactions on days when it failed to maintain the minimum required net capital; failed to maintain the level of net capital Webb agreed to with the Commission; violated rules and regulations requiring the accurate maintenance and submission of books, records, and reports; and conducted business without employing properly qualified principals required by NASD rules. The causes involving Avello concerned only the financial reporting obligations; the complaint alleged that HKS, acting through both Webb and Avello, had failed to maintain its required level of net capital, had kept inaccurate books and records, and had filed inaccurate FOCUS reports. Those causes were based on the firm's violation of five rules: Exchange Act Rules 15c3-1, 17a-3, and 17a-5, and NASD Conduct Rules 2110 and 3110. Exchange Act Rule 15c3-1 is the net capital rule. Rule 17a-3 requires brokers and dealers to keep various books and records current, while Rule 17a-5 requires them to file the FOCUS reports. *See* 17 C.F.R. §§ 240.15c3-1, 240.17a-3, 240.17a-5. NASD Rule 2110 requires members to "observe high standards of commercial honor and just and equitable principals of trade," while Rule 3110 is the NASD counterpart to the Exchange Act rule regarding the proper keeping of books and records. The complaint did not charge Avello with violating NASD Membership and Registration Rule 1022(b)(2)—the NASD provision specific to FINOPs.

Before any hearings were conducted, Avello stipulated that five items were not accounted for properly in HKS's books, records, and reports. The first is a debt HKS owed to American Express for charges incurred by HKS's officers. At the time, Avello believed that the underlying charges were personal to the officers and thus did not record the unpaid balance as a firm liability, though he acknowledged that the account agreement with American Express—which he did not read until later—made all charges the responsibility of the firm as well as the individual cardholders. Second is a $60,000 sole-recourse loan that Avello initially recorded as a liability, but later removed from HKS's books on Webb's word that it had been paid, even though it had not. The third item is a lease agreement for office furniture and equipment. Instead of reading the agreement and recognizing that the lease should have been capitalized and the future payments recorded as a liability, Avello treated it as a rental contract and recorded the monthly payments as "rent" based on a bank debit memorandum with that notation. Fourth, Avello included certain receivables, technically called payment-for-order-flow receivables, owed to HKS by another broker-dealer as allowable assets on the firm's FOCUS reports, even though he stipulated that they should not have been treated as allowable assets. Finally, Avello failed to account for debts HKS owed various vendors and delivery services because the firm would not provide him with complete and accurate information. When submitting the firm's FOCUS report to the NASD, Avello highlighted these last debts in a letter, stating that he had not been able to review any of the underlying documents and was unable to verify the accuracy of the amounts reported.

Avello also stipulated to three more accounting errors made as a consequence of Webb's unsuccessful attempt to increase HKS's net capital. The first is a $50,000 note executed by Webb on behalf of HKS that was paid down to $47,000 by January 1996. Webb never disclosed the note to Avello, so Avello never recorded it as a firm liability from late 1995 through 1996 when Webb replaced the note with a $50,000 revolving line of credit. Avello also booked as good capital a $65,000 check drawn on Webb's personal checking account and deposited into HKS's checking account, even though at the time Avello booked the check Webb lacked sufficient funds in his checking account to cover it. Third is a $125,000 account at Smith Barney that Avello booked as good capital even though it was not because it was encumbered by a non-HKS officer's authority to withdraw funds from the account.

Although Avello stipulated to the improper accounting, he denied responsibility for the resulting rules violations on the ground that he had adequately performed his role as FINOP. The Hearing Panel disagreed and held him liable for all the accounting errors except those pertaining to the $50,000 note, the American Express debt, and the $125,000 account at Smith Barney. With respect to the net capital rule, the Hearing Panel concluded that Avello's errors made him responsible for four of the days when HKS conducted securities

transactions while its net capital was below the required level. The Hearing Panel imposed a $5,000 fine, $500 in costs, and a 30-day suspension.

A party dissatisfied with a decision of the Hearing Panel may initiate what becomes a three-step process of appeal. The first step is an appeal to the National Adjudicatory Council (NAC). NASD MANUAL, Procedural Rule 9311. The next is a petition for review by the Commission, 15 U.S.C. § 78s(d)(2), and then, if requested, we will review the final decision of the Commission, 15 U.S.C. § 78y(a)(1).

Avello followed these steps, some more than once. Initially the NAC held Avello responsible for the same inaccuracies that the Hearing Panel did, though it added responsibility for the American Express debt that the Hearing Panel had been willing to overlook. The NAC confirmed that Avello was not responsible for the unbooked $50,000 note or the account at Smith Barney, and further absolved him of responsibility for misbooking Webb's $65,000 check because Avello could not have known the check was no good on the date he booked it. The NAC therefore modified the Hearing Panel's decision, holding Avello responsible for only one day's net capital violation, rather than four, and setting aside the 30-day suspension. On Avello's petition for review, the Commission conducted an independent review of the record but ultimately agreed with NAC.

Avello then petitioned this court for review of the Commission's decision. Before responding to Avello's brief to this court, the Commission moved to remand the case, having discovered an error in the calculation of HKS's net capital position on the single date for which Avello was held responsible. We granted the request. The Commission remanded the case to the NAC to clarify Avello's liability for the net capital violation.

Upon further review the NAC concluded that it mistakenly had taken into account the unbooked $50,000 note for which it had absolved Avello, and that ignoring that liability he would not be responsible for any net capital violation. The NAC did not completely exonerate Avello, however, because it still considered him responsible for the five accounting errors, though it did reduce the sanction to a letter of caution, the minimal sanction under NASD practice for a rules violation, *see In re Martin Lee Eng*, Exchange Act Release No. 44224, 2001 WL 427969, at *3 (Apr. 26, 2001). Avello again petitioned for review by the Commission. His petition raised for the first time additional arguments related to his recordkeeping and reporting violations, which the Commission deemed waived because they could have been raised in the earlier proceedings. The Commission therefore once again affirmed the findings of the NAC and sustained the sanction.

This case has now made its way back to us. Our review is limited to the Commission's decision sustaining the NASD's sanctions and we treat the findings of

fact as conclusive "if supported by substantial evidence." 15 U.S.C. § 78y(a)(4); *see Otto*, 253 F.3d at 964. Avello's brief lists some ten issues, but we think he makes two principal arguments.

His first is that Exchange Act Rules 17a-3 and 17a-5 do not apply to him because those rules literally apply to brokers or dealers, not to FINOPs. He is correct that Exchange Act Rules 17a-3 and 17a-5, "by their terms, apply to broker-dealers, not to persons associated with broker-dealers." *Davrey Fin. Servs. Inc.*, Exchange Act Release No. 51780, 2005 WL 1323032, at *4 n.13 (June 2, 2005) (naming Rules 17a-3 and 17a-4, but analysis is applicable to Rule 17a-5 because it too is limited to broker-dealers). Indeed, in its brief the Commission concedes that HKS, not Avello, violated the regulations. And in its decisions the Commission often attributes the violation of a rule to the securities firm while characterizing the limited principal as responsible for the firm's violations. *See id.*; *In re William H. Gerhauser*, Exchange Act Release No. 40639, 53 S.E.C. 933, 938-40 (Nov. 4, 1998) (discussing net capital requirement as firm's obligation); *In re Gilad J. Gevaryahu*, Exchange Act Release No. 33038, 51 S.E.C. 710, 710 (Oct. 12, 1993) (referring to FINOP as "responsible for the firm's failure to comply" with net capital, recordkeeping, and reporting requirements); *In re George Lockwood Freeland*, Exchange Act Release No. 34-32192, 51 S.E.C. 389, 390 (Apr. 22, 1993) (same).

But Avello could violate Exchange Act rules indirectly through NASD Membership Rule 1022(b). That rule, akin to an accomplice-liability statute, incorporates violations of other provisions. If Avello, as the FINOP, caused HKS to violate an Exchange Act rule by maintaining inaccurate records or submitting inaccurate reports, then he is responsible for the Exchange Act violation. Thus, because HKS violated Exchange Act recordkeeping and reporting rules, Avello was responsible for the violations under Rule 1022(b)(2).

Avello counters that he was never charged with violating Rule 1022(b) and so to hold him liable for violating it contravenes the procedural safeguards prescribed by 15 U.S.C. § 78o-3(h)(1). True, the underlying complaint does not reference Rule 1022(b), but Avello has not explained how that omission has prejudiced him. *See Rehman v. Gonzales*, 441 F.3d 506, 509 (7th Cir. 2006) (explaining in immigration context that reviewing court will not set aside agency decision on basis of claimed procedural error unless mistake or error caused prejudice). Nor do we see how it could have; the Hearing Panel first put him on notice of the application of Rule 1022(b)(2) in 1999, yet Avello waited to argue that he lacked notice of that rule until five years and four rounds of review later. Anyway, the language of the complaint, alleging that HKS violated the rules through Avello, was enough to alert him to the NASD's theory of liability.

We turn then to his second main argument. Avello argues that even if Rule 1022(b)(2) applies to him, he was held to too high a standard under that rule. He asserts that he has effectively been held to a standard of "strict liability" for guaranteeing the accuracy of the firm's reports when he was simply "the hired hand used to perform the Firm's net capital calculations." He suggests that a reasonableness standard should govern and that his conduct should be compared to what reasonable accountants (though we suspect he means bookkeepers)—not auditors—do. The Commission does not articulate a precise standard; in its brief the Commission emphasizes the plain language of Rule 1022(b)(2) making a FINOP responsible both for the accuracy of the firm's FOCUS reports and for supervising the persons who generate the records underlying the reports, but the Commission does not argue that Avello could have been sanctioned for inaccuracies about which he did not know and could not have known. Indeed, the Commission points out that Avello was disciplined because he booked information that he either knew to be incorrect or with reasonable inquiry would have discovered to be incorrect.

We need not decide, then, whether the Commission could adopt or enforce a standard making a FINOP strictly liable for inaccuracies in a firm's FOCUS reports or the underlying documentation. Avello himself proposes that liability should attach for unreasonable conduct, and there is substantial evidence to support that Avello acted unreasonably in accounting for the American Express bills, the sole-recourse loan, the lease agreement for office furniture and equipment, the receiveables owed to HKS, and the vendor and delivery service debts. With respect to the American Express debt, the account agreement HKS had with American Express stated that the charges were the responsibility of the company as well as the individual; Avello should have looked at the agreement to determine whose responsibility the charges were, especially when he discovered that the individual cardholders had been in default on their payments for several months. There is no explanation for Avello's failure to continue booking the sole-recourse loan as a liability; he had booked it as a liability for several months in 1996 but then failed to book it as a liability thereafter based on (what turned out to be a false) representation by Webb that it had been paid. As for Avello's failure to capitalize the furniture lease and book the overall liability rather than show the monthly payments as rent, he admitted that he booked the lease as he did based on a bank debit memo and that he would have recorded it correctly had he taken the time to look at the lease itself. Given that a FINOP must examine the underlying documentation before classifying an item, *see Gerhauser*, 53 S.E.C. at 947 n.40, we find no fault with the Commission's determination that these were errors for which Avello was responsible.

Likewise, the Commission's determination that Avello bore responsibility for two other inaccuracies is supported by the record. Avello had been twice informed by NASD staff that the receivables were not the type that could have been booked

as allowable assets for purposes of the firm's net capital calculation. Yet for the following four months he continued to book them as allowable assets. Finally, Avello admitted that, despite knowing he was not getting complete and accurate information from HKS regarding various debts owed to vendors and delivery services, he nevertheless submitted FOCUS reports that did not include the debts as liabilities. Although he informed the NASD by letter that he was unsure of the report's inaccuracy, he essentially violated one rule (requiring accurate reports) to save the firm from violating another (requiring quarterly reports). But if Avello found himself unable to discharge his duties as FINOP, the proper course was for him to resign, not to file reports with attached caveats. *See Freeland*, 51 S.E.C. at 392. Thus, there was substantial evidence to support the Commission's determination that Avello failed to satisfy his duties as a FINOP in these five instances.

Avello's remaining arguments for a different standard do not convince us to alter our view. That he disclaimed responsibility for the accuracy of the firm's books and records in an engagement letter with HKS matters not; one cannot contract out of statutory duties. *See U.S. Sec. Clearing Corp.*, Exchange Act Release No. 35066, 52 S.E.C. 92, 98 n.30 (Dec. 8, 1994). Nor are we persuaded that the fact that he worked only four hours a month for HKS calls for absolving him of liability. *See Gevaryahu*, 51 S.E.C. at 712-13. His policy argument that smaller firms will not be able to afford FINOPs who perform the duties as diligently as required by NASD rules is irrelevant but, regardless, has no support in this record. All we know is that Avello and HKS came to an agreement about how he was to be compensated, and that in retrospect Avello believes the contract price was too little for what the NASD expected of him. Finally, despite his contention that a FINOP ought to be treated as someone who simply compiles numbers, rather than as an auditor, the requirements of a FINOP are different than those of a bookkeeper. The position of a FINOP is unique and governed solely by NASD rules. So even though auditors examine underlying documents, the Commission has decided that a FINOP should do so as well. *See Gerhauser*, 53 S.E.C. at 947 n.40; *In re James S. Pritula*, Exchange Act Release No. 40647, 53 S.E.C. 968, 972 (Nov. 9, 1998) (explaining that FINOP should have ascertained whether check had been deposited before treating it as asset).

Avello's other arguments merit little discussion. He argues that he could not have violated NASD Conduct Rule 2110 because the Commission did not find that he acted in bad faith. (As with the Exchange Act rules, Avello is liable for the firm's violation of Rule 2110 only through Rule 1022 because Rule 2110 applies to "members," which Avello was not.) But the Commission does not require a finding of bad faith when the predicate for violating Rule 2110 is the violation of another NASD or Exchange Act rule, *see In re Chris Dinh Hartley*, Exchange Act Release No. 50031, 2004 SEC LEXIS 1507, at *10 n.13 (July 16, 2004); *Gerhauser*, 53 S.E.C.

at 942, and we have already explained that substantial evidence supports that Avello was responsible for other violations. Avello's arguments that the Commission was required to find that he "controlled" a person who committed a violation under 15 U.S.C. § 78t(a) or that he acted "willfully" under 15 U.S.C. § 78o(b)(4) were not presented until his return to the Commission after remand and are accordingly waived. *See United States v. Parker,* 101 F.3d 527, 528 (7th Cir. 1996) ("A party cannot use the accident of a remand to raise in a second appeal an issue that he could just as well have raised in the first appeal because the remand did not affect it."); *W. Va. v. EPA*, 362 F.3d 861, 871 (D.C. Cir. 2004) (refusing to consider arguments raised for first time after remand that were not raised in agency rulemaking proceedings conducted prior to remand). His argument that he is not responsible for HKS's reports because they were submitted by his corporation and not signed by him is frivolous because a FINOP, as a "person associated with a member" is, by definition, a natural person. *See* NASD MANUAL, Bylaws of the NASD, Art. 1(dd).

We note that the various agency decisions recognize Avello's good-faith efforts at accurate financial reporting. But those efforts do not excuse his failure to comply with the duties of a FINOP, and that failure justifies the lenient sanction upheld by the Commission. We therefore DENY the petition for review.