In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-3948

RACHID CHAKIR,

*Petitioner,*

*v.*

ALBERTO GONZALES, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A97-602-757

ARGUED SEPTEMBER 26, 2006—DECIDED OCTOBER 19, 2006

Before BAUER, EASTERBROOK, and ROVNER, *Circuit Judges.*

BAUER, *Circuit Judge.* Rachid Chakir applied for asylum, asserting that he has a well-founded fear of persecution in his native Morocco because of his conversion from Islam to Christianity. Chakir petitions for review of the Board of Immigration Appeals ("BIA") order affirming the denial of his application for asylum. We affirm the decision of the BIA and deny Chakir's petition for review.

## I. Background

Chakir is a native and citizen of Morocco and, by birth, a Muslim. While in Morocco, he developed an interest

in Christianity and began to study the Bible through a correspondence program. After entering the United States on a six-month tourist visa on August 22, 1999, Chakir continued his Bible studies. He was baptized as a Christian on September 14, 2003.

Chakir did not leave the United States at the expiration of his visa, however. He applied to the former Immigration and Naturalization Service ("INS") for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT") on November 14, 2003. His asylum application asserted that he fears persecution or death because of his faith should he return to Morocco. On December 24, 2003, INS initiated removal proceedings against Chakir. At the initial hearing, Chakir conceded his removability based on his failure to depart under the terms of his visa and, at a hearing on May 19, 2004, presented a renewed claim for political asylum and withholding of removal.

At the second hearing, Chakir testified that he fears that if he returns to Morocco, he will be killed or persecuted because of his Christian faith. He testified that while he has concerns about the Moroccan government, his main concern is persecution by individuals and groups that the Moroccan government is unwilling to control. In particular, he stated that he fears his friends, his community, his neighbors, individuals in Morocco's government, Muslim clerics and their followers, and even his family because of his conversion to Christianity, which, Chakir testified, his family would consider a dishonor. According to Chakir, his brothers and sisters, who live in Morocco, and Morocco itself had become more fundamentalist in their Islam.

Chakir offered as witnesses John Prodinger and Richard Smits, who attended church with Chakir and who testified that Chakir's conversion to Christianity was sincere. Chakir

also offered documentary evidence, including an article entitled "A Brief Report About the Moroccan Church (2001)." This article reported that Christians in Morocco lack freedom to attend churches or to practice their faith openly. The article also described intimidation tactics used against Christians, including placing known Christians under police surveillance, confiscating Christian materials and turning such materials over to the police, encouraging the media to rouse public sentiment against Christians, encouraging Muslim fanatics to persecute Christians and force them to reconvert to Islam, and subjecting Christians to police interrogations, threats, physical assaults, and imprisonment because of their faith.

The government offered as its evidence two State Department reports on Morocco: "Morocco—International Religious Freedom Report 2003" ("IRFR") and "Morocco—Country Reports on Human Rights Practices— 2003."

At the conclusion of the hearing, the Immigration Judge ("IJ") found Chakir's conversion to Christianity sincere and credible but denied Chakir's petitions for asylum and withholding of removal. The IJ determined that Chakir's conversion to Christianity justified an exception to the one-year bar for applying for asylum. The IJ disagreed, however, with Chakir's opinions regarding the conditions and practices of Muslims in Morocco and about the likelihood of his mistreatment. The IJ did not consider Chakir to be the type of person who was courageous enough to martyr himself for his faith in Morocco or to put himself at risk by practicing his Christianity so openly as to attract attention. The IJ compared conditions for Christians in Morocco with those in Iran, finding that the conditions in Morocco were very dissimilar from those in Iran, where apostasy is a capital offense and where courts apply Sharia law. The IJ also determined that Chakir had failed to identify any particular individual as his persecutor. Concluding that Chakir did not have a well-founded fear of persecution, the

IJ denied Chakir's application for asylum, withholding, and protection under the CAT but granted Chakir voluntary departure from the United States.

Chakir appealed the IJ's decision denying his asylum petition to the BIA, which affirmed the ruling. The BIA determined that the IJ was correct in relying on the IRFR and reasonable in finding that Chakir did not have a well-founded fear of persecution. The BIA noted that while Chakir had not articulated a clear claim that the IJ had violated his due process rights during the hearing, any such assertion would fail because the IJ is entitled to examine witnesses and clarify the testimony on specific allegations. The BIA found no reversible error based on the IJ's treatment of Chakir during the hearing and that the IJ had based the ultimate resolution of Chakir's petition on conditions in Morocco rather than on the comparison of conditions in Morocco and Iran. The BIA upheld the grant of voluntary departure to Chakir and then dismissed the appeal. This timely petition for review of the BIA's order followed.

## II. Discussion

Chakir challenges the denial of his asylum application on two grounds: (1) the IJ violated Chakir's due process rights during the hearing, entitling Chakir to a new hearing; and (2) Chakir met his burden of establishing a reasonable possibility of persecution.

Because the BIA's opinion supplements the opinion of the IJ, the IJ's opinion as supplemented by the BIA's opinion becomes the basis for our review. *Liu v. Ashcroft*, 380 F.3d 307, 311 (7th Cir. 2004). We review the IJ's denial of Chakir's petition under the deferential substantial evidence standard, which requires us to affirm if the decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* (citations

omitted). We will reverse only if we find that the evidence compels a different result. *Brucaj v. Ashcroft*, 381 F.3d 602, 606 (7th Cir. 2004).

We review Chakir's due process claim *de novo*, as the procedural sufficiency of an immigration hearing is a question of law. *See Kerciku v. I.N.S.*, 314 F.3d 913, 917 (7th Cir. 2003).

## A.  Chakir's Due Process Claim

Chakir styled his due process claim as a claim brought pursuant to the Fifth Amendment of the U.S. Constitution, which entitles aliens to due process of law in deportation proceedings. This Court has counseled on numerous occasions, however, that non-constitutional arguments must precede constitutional contentions. *See Rehman v. Gonzales*, 441 F.3d 506, 508 (7th Cir. 2006) (explaining that "[n]on-constitutional arguments always come first; constitutional contentions must be set aside until their resolution is unavoidable"). *See also Djedovic v. Gonzales*, 441 F.3d 547, 550 (7th Cir. 2006); *Boyanivskyy v. Gonzales*, 450 F.3d 286, 292 (7th Cir. 2006). Aliens are afforded the right to present all relevant evidence at an impartial hearing by statute, 8 U.S.C. § 1229a(b)(4)(B),[1] and regulation, 8 C.F.R. § 1240.1(c).[2] Unless Chakir claimed that the applicable statute and regulation are constitutionally deficient, which he conceded at oral argument that he

---

[1]  8 U.S.C. § 1229a(b)(4)(B) provides, in part, that in an immigration hearing, "the alien shall have a reasonable opportunity . . . to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government."

[2]  8 C.F.R. § 1240.1(c) states, "The immigration judge shall receive and consider material and relevant evidence, rule upon objections, and otherwise regulate the course of the hearing."

does not, we will not reach the constitutional question. *Rehman*, 441 F.3d at 508.

Reframed as a statutory claim, we consider whether the IJ denied Chakir the reasonable opportunity to present his relevant evidence at the asylum hearing. *Boyanivskyy*, 450 F.3d at 293. To prevail on this claim, Chakir must demonstrate prejudice such that the IJ's error affected the outcome of the proceedings. *Rehman*, 441 F.3d at 509.

As a preliminary matter, the government contends that this Court lacks jurisdiction to consider this claim because Chakir failed to argue to the BIA that he was denied a reasonable opportunity to present evidence at the asylum hearing. Chakir's brief to the BIA did not articulate such a claim, as Chakir only raised two arguments addressing the merits of the IJ's decision. Generally, an alien is required to raise and exhaust his remedies before the BIA as to each claim or ground for relief to preserve his right to judicial review of that claim. *Capric v. Ashcroft*, 355 F.3d 1075, 1087 (7th Cir. 2004). The exhaustion of administrative remedies requirement allows the BIA to resolve procedural failings that it is capable of addressing. *Feto v. Gonzales*, 433 F.3d 907, 912 (7th Cir. 2006).

Although Chakir failed to argue to the BIA that he was denied a reasonable opportunity to present his relevant evidence at the asylum hearing, a review of the hearing transcript compels such an inquiry. The BIA conceded as much when it noted Chakir's failure to include a due process argument but concluded that there was no reversible error based on the IJ's treatment of Chakir during the hearing. In evaluating the transcript and in reaching this conclusion, the BIA considered the merits of a due process challenge and made a legal determination, which it in-

cluded in its opinion.[3] As a result, there is a final agency decision with respect to the claim that the IJ violated Chakir's statutory and regulatory right to present his relevant evidence at the asylum hearing. We therefore have jurisdiction over this claim.

Turning to the claim itself, we have no doubt that the IJ overstepped the bounds of a neutral arbiter in his questioning of Chakir. Chakir's contention that he was denied a reasonable opportunity to present his evidence fails, however, because he has not shown any prejudice resulting from the IJ's conduct during the asylum hearing. As this court has explained,

> [w]hen a court excludes evidence, counsel must make an offer of proof or otherwise alert the tribunal to the substance of what the evidence would have been. Fed. R. Evid. 103(a)(2). That rule does not apply directly to administrative proceedings, but its substance still governs—for courts do not set aside agencies' decisions unless mistakes cause prejudice, and how can we ascertain prejudice without an offer of proof or some substitute?

*Rehman*, 441 F.3d at 509. Counsel for Chakir made no offer of proof during the hearing as to additional evidence that he would have presented, nor does Chakir now explain what that evidence would have included. In the absence of any

---

[3] While the BIA framed the issue as a due process claim, the BIA's resolution of this claim encompasses both a due process challenge and the statutory and regulatory challenge that the IJ's actions denied Chakir the opportunity to present his evidence at the asylum hearing. Specifically, the BIA found "no reversible error based on the Immigration Judge's treatment of the respondent during the asylum hearing." BIA Order at n.3. In any event, the outcome of the our inquiry is the same regardless of whether we consider this claim on a constitutional or statutory basis.

information as to this missing, material evidence, Chakir cannot establish that he was prejudiced by the IJ's actions during the hearing. As such, his claim that he was denied the opportunity to present his relevant evidence at the asylum hearing fails.

While Chakir's statutory claim fails, we again must note the significant number of asylum cases involving "intemperate, impatient, and abrasive immigration judges," which should "sound a warning bell to the Department of Justice that something is amiss." *Giday v. Gonzales*, 434 F.3d 543 at 550 (7th Cir. 2006) (citing *Diallo v. Ashcroft*, 381 F.3d 687, 701 (7th Cir. 2004); *Hasanaj v. Ashcroft*, 385 F.3d 780, 783 (7th Cir. 2004); *Kerciku*, 314 F.3d at 918; *Podio v. I.N.S.*, 153 F.3d 506, 510 (7th Cir. 1998)).

During the course of the asylum hearing, the IJ asked Chakir questions after Chakir's direct examination and again after his cross-examination. The IJ then asked counsel for Chakir and counsel for the government questions during their closing arguments. When Chakir's attorney objected to various questions posed by the IJ to Chakir, the IJ overruled or otherwise failed to rule on the objections. The IJ also refused to allow Chakir's attorney to ask follow-up questions after the IJ questioned Chakir extensively following the government's cross-examination. All told, the IJ asked Chakir approximately 128 questions. Chakir's attorney, by contrast, asked Chakir 47 questions. The government's attorney asked Chakir a mere 11 questions.

The IJ also interrogated Chakir regarding matters beyond Chakir's knowledge, including Moroccan and Iranian law, and then accused Chakir of mis-characterizing the law. The IJ asked Chakir questions about his family, the substance of which Chakir had addressed during his direct examination. The IJ then aggressively interrogated Chakir on Moroccan civics, asking Chakir questions about the role of

Islamic law in Morocco; the effect of the French legal system on the Moroccan legal system; the Moroccan legislature; the role of the former king of Morocco; Moroccan elections; the Party of Justice; an Algerian political party and the civil war in Algeria; the present ruler of Morocco, Mohammed VI; and the Moroccan court system and the role of Islamic law.

We are mindful of an immigration judge's responsibility to establish the record as well as serve as fact-finder and adjudicator. *Hasanaj*, 385 F.3d at 783. And we do not want to discourage immigration judges from asking questions of witnesses in order to establish the record; rather, we expect immigration judges, like any judge, to question witnesses and conduct asylum hearings with the "patience and decorum befitting a person privileged with this position," *Giday*, 434 F.3d at 550 (quoting *Diallo*, 381 F.3d at 701). We expect this IJ to act accordingly in all future proceedings.

### B. Persecution

In denying Chakir's application for asylum, the IJ believed that Chakir's conversion to Christianity was sincere but determined that Chakir does not have a well-founded fear of future persecution. To establish this claim, Chakir had the burden of proving that he either has endured past persecution or has a well-founded fear of future persecution based on one of the statutorily protected categories. *See* 8 U.S.C. § 1101(a)(42)(A); *Giday*, 434 F.3d at 553. In the context of asylum proceedings, "persecution" generally concerns punishment or substantial harm. *Margos v. Gonzales*, 443 F.3d 593, 597 (7th Cir. 2006). "Persecution does not encompass all treatment that our society regards as unfair, unjust, or even unlawful or unconstitutional." *Id.* (quoting *Firmansjah v. Gonzales*, 424 F.3d 598 at 605 (7th Cir. 2005)). Chakir does not assert that

he was subjected to past persecution but argues that he established a genuine fear of future persecution because of his religion if he returns to Morocco.

An asylum applicant can establish a well-founded fear of future persecution if the fear is "subjectively genuine and objectively reasonable in light of the credible evidence." *Diallo*, 381 F.3d at 696 (quoting *Capric*, 355 F.3d at 1084-85). In reviewing the denial of an asylum claim, "[c]redibility determinations, findings of past persecution, and findings of a well-founded fear of future persecution are all factual determinations owed our strong deference." *Id.* at 698 (citing *Medhin v. Ashcroft*, 350 F.3d 685, 688-89 (7th Cir. 2003)). We assess "whether the BIA's determination was supported by reasonable, substantial, and probative evidence on the record considered as a whole, and reverse only if the evidence compels a contrary conclusion." *Youkhana v. Gonzales*, 460 F.3d 927 at 931 (7th Cir. 2006) (quoting *Tapiero de Orejuela v. Gonzales*, 423 F.3d 666, 671 (7th Cir. 2005)). The evidence does not compel a contrary conclusion in the instant matter.

In finding that Chakir had not proven that he has a well-founded fear of future persecution, the IJ credited the State Department's IRFR on Morocco. The IRFR reported that the Moroccan constitution establishes Islam as the state religion but also provides for freedom of religion and the right of non-Muslim communities to practice their faith openly. The report acknowledged that converts to Christianity generally face social ostracism. According to Chakir, the social ostracism faced by Moroccan Christians includes being terminated by their employers and having family, friends, and neighbors deny them food, beat and abuse them, ridicule them, denounce them to authorities, and force them to perform Islamic practices. The IRFR also reported that the Moroccan government places certain restrictions on Christian religious materials. While Chakir offered evidence about Islamic law generally, *e.g.*, under

Islamic law, Muslims who convert to Christianity are deemed apostates and the penalty for apostasy is death, Chakir did not establish that Moroccan courts follow this law. The IRFR and Chakir's testimony established that the Moroccan legal system is not based on Sharia law. The IRFR further reported that the Moroccan government encourages tolerance and has criminalized attempts to prevent individuals from practicing their religious beliefs. The acts of private citizens do not constitute persecution unless the government is complicit in those acts or is unable or unwilling to take steps to prevent them. *E.g.*, *Pramatarov v. Gonzales*, 454 F.3d 764, 766 (7th Cir. 2006). The IJ's conclusion that the Moroccan government has not endorsed the more serious manifestations of private reactions to conversion, and is willing to protect a convert if alerted to something like a beating, is supported by substantial evidence.

## III.  Conclusion

For the foregoing reasons, we AFFIRM the order of the BIA and deny Chakir's petition for review.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*