NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 3, 2010
Decided August 10, 2010

**Before**

Hon. Daniel A. Manion, *Circuit Judge*

Hon. Terence T. Evans, *Circuit Judge*

Hon. Diane S. Sykes, *Circuit Judge*

| | |
|---|---|
| No. 09-3255 | On Petition for Review of an Order of the Board of Immigration Appeals |
| Jean Marie Vianney Mudahinyuka, | |
| *Petitioner*, | A078-782-984 |
| *v.* | |
| Eric H. Holder, Jr., Attorney General of the United States, | |
| *Respondent*. | |

**O R D E R**

The Department of Homeland Security determined that Jean Marie Vianney Mudahinyuka, a native of Rwanda, was subject to expedited removal proceedings because he had

committed an aggravated felony after his admission to the United States. He then applied for withholding of removal and protection under the Convention Against Torture. Following a hearing, an immigration judge denied the applications, and the Board of Immigration Appeals dismissed Mudahinyuka's appeal. Mudahinyuka petitions for review of the Board's decision. For the reasons that follow, we deny the petition in part and dismiss in part for want of jurisdiction.

I.

In September 2000, Mudahinyuka, a native and citizen of Rwanda, was admitted to the United States as a refugee by using the alias Thierry Rugamba and claiming to be a victim of the 1994 Rwandan genocide. Over three years later, the Department of Homeland Security ("DHS") discovered Mudahinyuka's true identity and that the Rwandan government had issued a warrant for his arrest on charges of genocide and crimes against humanity. A criminal complaint was filed, and immigration officers arrested him in May 2004. He pleaded guilty to four charges: (1) evading the immigration laws by appearing under an assumed or fictitious name while applying for admission, (2) knowingly making false statements under oath with respect to a material fact in an application, (3) knowingly making a materially false, fictitious, or fraudulent statement in a matter within the jurisdiction of the executive branch of the Government of the United States, and (4) forcibly assaulting and resisting federal immigration officers engaged in official duties using a deadly weapon and inflicting bodily injury. (The assault charge arose from the events surrounding his arrest in May 2004.) The district court sentenced him to 51 months' imprisonment.

DHS revoked Mudahinyuka's refugee status because he was ineligible for refugee status at the time of his admission and determined that he was amenable to expedited removal proceedings under 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony. The agency then issued a final administrative order that he be removed to Rwanda. But before he could be removed, Mudahinyuka indicated that he fears persecution and torture if returned to Rwanda because he has been accused of participating in the genocide. His claims were referred to an asylum officer to determine whether he should be allowed to apply for withholding of removal and protection under the Convention Against Torture ("CAT"). The asylum officer determined there was a reasonable possibility Mudahinyuka would be subject to persecution or torture in Rwanda and referred the case to an immigration judge ("IJ"). Mudahinyuka then applied for withholding of removal and protection under the CAT.

Over the course of several hearings before an IJ, Mudahinyuka presented various testimonial and documentary evidence in support of his claims, the relevant parts of which we now recount. He admitted being a member of the National Republican Movement for Democracy and Development ("MRND"), the ruling Hutu political party at the time of the genocide, and serving as a leader for the Interahamwe, the MNRD's youth militia. But he

claimed he withdrew from the MNRD when the genocide of Tutsis began and denied participating in it. He said he fears he will be persecuted or tortured if he returns to Rwanda because the current government wrongly believes he, as a former MRND leader, took part in the genocide.

Mudahinyuka and his wife also testified about his May 2004 arrest. They averred that they awoke to five armed officers barging into their bedroom and handcuffing them. They denied that he resisted arrest, touched the officers' weapons, and that any of the officers were injured.

Mudahinyuka sought to have Rwandan refugee Noel Twagiramungu, a doctoral candidate in international relations and human rights at Tufts University and a lecturer at Harvard University on genocide, designated as an expert on the Rwandan genocide and judicial system. Twagiramungu had previously served as an observer of the gacaca courts—tribunals set up by Rwanda to adjudicate the thousands of genocide prosecutions—and written a master's thesis on the subject. He opined that Rwandan courts do not meet international standards of justice and that Mudahinyuka would not receive a fair trial there if prosecuted for his purported involvement in the genocide. He also testified that prison conditions in Rwanda are generally poor, that political prisoners are more likely to be tortured than other prisoners, and that there is an eighty percent chance Mudahinyuka will be tortured if removed to Rwanda.

The evidence presented by the government painted a very different picture. It offered documentary evidence of the international arrest warrant for Mudahinyuka and the seven-count indictment issued by the Rwandan government charging him with genocide and crimes against humanity. It also presented several witness statements and reports directly implicating Mudahinyuka (also known as "Zuzu") in the genocide.

The government also elicited the testimony of immigration agents Gregory Carpenter and John St. John, two of the officers who arrested Mudahinyuka in May 2004. Carpenter stated that during the arrest, Mudahinyuka tried to take his shotgun and, in the process, struck him in the forehead with the weapon, breaking his glasses and leaving a gash that required medical attention. St. John gave a similar account and stated that, in attempting to subdue Mudahinyuka, he suffered lacerations on his hand and a broken finger that necessitated six weeks of physical therapy.

Professor William Schabas, professor of human rights law at the National University of Ireland, also testified on the government's behalf. He opined that the Rwandan court in which Mudahinyuka would be tried has fair-trial and right-to-counsel guarantees, that Mudahinyuka would not have trouble finding free legal representation, that prison conditions are adequate and improving, that torture and abuse of prisoners is rare and not tolerated by the Rwandan government, and that Mudahinyuka is very unlikely to be tortured if removed.

At the conclusion of the hearings, the IJ denied Mudahinyuka's applications for relief. The IJ held that Mudahinyuka is statutorily ineligible for withholding of removal under the Immigration and Nationality Act because his conviction for assaulting federal officers was a "particularly serious crime." Alternatively, the IJ concluded that Mudahinyuka is barred from relief under the Act because he participated in the persecution of Tutsis in the 1994 genocide. The IJ further held that even if the two statutory bars did not apply, Mudahinyuka was not entitled to withholding of removal under the Act for the same reasons the IJ was denying his claims under the CAT.

Concerning Mudahinyuka's claim for withholding of removal under the CAT, the IJ held that the particularly-serious-crime bar also precluded relief under that provision. The IJ then considered Mudahinyuka's request for deferral of removal under the CAT and determined that he had failed to demonstrate it is more likely than not he will be tortured if removed to Rwanda. In reaching that conclusion, the IJ refused to recognize Twagiramungu as an expert because his opinions did not meet the standards for expert testimony established in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). The IJ noted that although Twagiramungu had observed national and gacaca Rwandan courts, he had not published any articles on the subjects except for a master's thesis a few years earlier. In addition, in concluding Twagiramungu's testimony had limited probative value, the IJ thought it significant that he had not observed Rwandan courts for over five years (2004), had not observed Rwandan prisons since October 2003, cited no basis for his conclusion that Mudahinyuka faces an eighty percent chance of torture, and derived his opinions from secondary sources and some contact with researchers in Rwanda.

Mudahinyuka appealed to the Board of Immigration Appeals. In dismissing his appeal, the Board agreed with the IJ's determination that Mudahinyuka is statutorily barred from withholding relief under the Act and the CAT because his assault on immigration officers was a particularly serious crime. The Board also determined that the record supported the IJ's alternative conclusion that Mudahinyuka is ineligible for withholding of removal because he assisted in the 1994 persecution of Tutsis. In addition, it agreed that Twagiramungu should not have been recognized as an expert witness and held Mudahinyuka did not qualify for deferral of removal under the CAT because he had not proven he will more likely than not be tortured if removed to Rwanda. Mudahinyuka petitions for review of the Board's decision.

II.

The Board adopted and supplemented the IJ's decision, so we review the IJ's decision as supplemented. *Raghunathan v. Holder*, 604 F.3d 371, 379 (7th Cir. 2010). But before we turn to the arguments Mudahinyuka advances in his petition, we address our jurisdiction. Where, as here, the Attorney General has determined an alien is removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having committed an aggravated felony, 8 U.S.C. § 1252(a)(2)(C)

removes our jurisdiction to review a final order of removal. *Vaca-Tellez v. Mukasey*, 540 F.3d 665, 668 (7th Cir. 2008). But under 8 U.S.C. § 1252(a)(2)(D), we do retain jurisdiction to review "constitutional claims or questions of law."

Mudahinyuka does not dispute that he committed an "aggravated felony" as that term is defined in 8 U.S.C. § 1101(a)(43). He instead argues that the Board erred in concluding that he is ineligible for withholding of removal under the Act and the CAT because his conviction on count four of the indictment (assaulting federal immigration officers using a deadly weapon and inflicting bodily injury) was a "particularly serious crime" under 8 U.S.C. § 1231(b)(3)(B)(ii). More specifically, he takes issue with the Board's analysis of the 51-month sentence he received in the criminal case and its apportionment of the imprisonment term to the assault count. But that is not a constitutional claim, nor is it a pure question of law in the same vein as a "challenge[ ] to the BIA's interpretation of a statute, regulation, or constitutional provision, [a] claim[ ] that the BIA misread its own precedent or applied the wrong legal standard, or [a] claim[ ] that the BIA failed to exercise discretion at all." *Patel v. Holder*, 563 F.3d 565, 568 (7th Cir. 2009). So try as he might, Mudahinyuka's framing of the issue cannot turn the question into one over which we have jurisdiction. Therefore, we must dismiss that portion of his petition for want of jurisdiction. *See Petrov v. Gonzales*, 464 F.3d 800, 802 (7th Cir. 2006) (dismissing for lack of jurisdiction petition challenging Board's determination an aggravated felony was also a "particularly serious crime").[1]

Mudahinyuka also argues that the Board erred in denying his request for deferral of removal under the CAT. He contends that the Board's denial was based on a legal error, namely improperly applying a stricter standard than *Daubert* in refusing to recognize Twagiramungu as an expert. That argument is based in large part on the IJ's observation that Twagiramungu had not published any articles on the Rwandan courts other than a master's thesis. (Tab 55.)

Federal agencies are not bound by the Federal Rules of Evidence but only "the looser standard of due process of law." *Niam v. Ashcroft*, 354 F.3d 652, 659 (7th Cir. 2004). So *Daubert*, which interprets Federal Rule of Evidence 702, technically does not apply to administrative proceedings. *Id.* at 660. We have said, however, that the "spirit of *Daubert*" does apply and opined that it would be odd for an agency to use a standard for expert testimony that is more rigorous than *Daubert*. *Id.* In *Niam*, in granting a petition for review challenging an IJ's summary exclusion of proffered expert testimony, we also observed that "[t]here is no ironclad requirement that an academic, to be qualified as an expert witness, must publish academic books or articles on the precise subject matter of her testimony." *Id.*

---

[1] Because Mudahinyuka has failed to successfully challenge the Board's "particularly serious crime" determination, we need not address his arguments challenging its alternative holding (based on 8 U.S.C. § 1231(b)(3)(B)(i)) that he is ineligible for withholding of removal because he participated in the persecution of Tutsis during the Rwandan genocide.

Here, contrary to Mudahinyuka's portrayal, the IJ did not conclude that Twagiramungu was unqualified to testify as an expert solely because he had not published any recent articles. True, he did mention that Twagiramungu had not published any articles on the Rwandan courts lately. Under *Daubert*, a witness's publication record is certainly a pertinent consideration. *See* 509 U.S. at 594. But the IJ did not treat that fact as dispositive; he also considered other facts, including that Twagiramungu had not cited any authority for his opinion that Mudahinyuka faces an eighty percent chance of torture, had not recently observed Rwandan courts and prisons, and based his opinion on secondary sources and researchers in Rwanda. Mudahinyuka takes issue with those bases, too: he claims that the IJ's approach teeters on the slippery slope of requiring disqualification of experts unless they have personally observed the relevant subject matter. Again, contrary to Mudahinyuka's portrayal, the IJ did not adopt a per se rule that an expert must have observed the subject matter; rather, the IJ considered the totality of Twagiramungu's experience to conclude he was not qualified as an expert. While Mudahinyuka takes issue with that conclusion, our jurisdiction is limited to the purely legal question of whether the IJ erred in applying an inappropriate standard for expert testimony, which he did not.

Mudahinyuka's second argument pertaining to the denial of his deferral of removal request is that the IJ, by repeatedly interrupting his attorney's questioning of Twagiramungu and eliciting more testimony than his attorney did, violated his due process rights. We again remind alien petitioners that statutory claims should be resolved before constitutional claims. *Figueras v. Holder*, 574 F.3d 434, 437 (7th Cir. 2009). "Aliens have a statutory right to a reasonable opportunity to present evidence in their favor, 8 U.S.C. § 1229a(b)(4), and proceedings which comply with statutory and regulatory requirements also satisfy due process." *Id.* Whether the IJ violated this statutory right is a question of law we have jurisdiction to consider under § 1252(a)(2)(D). *Id.* We examine the totality of the circumstances in assessing whether an alien had a reasonable opportunity to present evidence. *Rodriguez Galicia v. Gonzales*, 422 F.3d 529, 538 (7th Cir. 2005).

Under 8 U.S.C. § 1229a(b)(1), Congress has authorized immigration judges to serve as both decision makers and prosecutors. *Apouviepseakoda v. Gonzales*, 475 F.3d 881, 885 (7th Cir. 2007). Immigration judges have broad discretion to control the interrogation process in order to discover the truth, subject to the alien's right to a fair hearing. *Id.* A hearing is fair even when an IJ asks the majority of questions and frequently interrupts, as long as his goal is to focus the testimony and exclude irrelevant evidence. *Id.* at 887. After our review of Twagiramungu's testimony at the hearing, we are satisfied that the IJ's interruptions and sometimes aggressive questioning were so designed and that Mudahinyuka had a reasonable opportunity to elicit testimony from Twagiramungu. But even if the IJ did cross the line and impede the presentation of evidence, Mudahinyuka has failed to show prejudice because he has not identified what evidence he was unable to present. *Rehman v. Gonzales*, 441 F.3d 506, 509 (7th Cir. 2006). Mudahinyuka's vague protest of not having been "afforded the right to question his witness and elicit testimony favorable to his position" does not suffice. *See id.* Accordingly, we deny the

part of the petition raising constitutional claims and pure question-of-law issues concerning the Board's deferral of removal under the CAT.

III.

The portion of the petition raising constitutional claims and pure questions of law is DENIED. The remainder is DISMISSED for want of jurisdiction.