In the

# United States Court of Appeals
## For the Seventh Circuit

—————————

No. 20-1739

JOVANI CASAS,

*Petitioner*,

*v.*

MERRICK B. GARLAND, Attorney General of the United States,

*Respondent*.

—————————

Petition for Review of an Order of the U.S. Department of
Justice Executive Office for Immigration Review
Immigration Court.
No. A089-353-201

—————————

ARGUED APRIL 8, 2022 — DECIDED AUGUST 29, 2022

—————————

Before WOOD, HAMILTON, and JACKSON-AKIWUMI, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. After discovering that Jovani Casas had reentered this country without authorization after already being subject to a removal order, the Department of Homeland Security reinstated her prior removal order. Eight years and some procedural errors later, DHS finally sought to remove Casas, but she claimed she feared returning

to Mexico. An asylum officer determined that Casas did not have a reasonable fear of persecution or torture in returning to Mexico, and the Immigration Judge (IJ) agreed. Casas then petitioned us for review. But because Casas cannot show that she suffered any prejudice as a result of DHS's procedural errors, and because the IJ's reasonable-fear finding is supported by substantial evidence, we must deny her petition.

## I

In 2008, DHS removed Casas, a Mexican citizen, from the United States pursuant to a valid removal order. Four years later, DHS learned she had returned to this country after she was arrested by local authorities for driving without a license. So DHS sought to reinstate her 2008 removal order.

The relevant form by which DHS sought to reinstate Casas's 2008 removal order is Form I-871, titled Notice of Intent/Decision to Reinstate Prior Order. Despite its title, the form actually has three separate sections to be filled out on three separate occasions: (1) a large section providing notice to the noncitizen of DHS's *intent* to reinstate a removal order, (2) a section for the noncitizen to acknowledge receipt of the notice, and (3) a final section for DHS's ultimate decision reinstating a removal order.

According to the dates on the Form I-871 Casas received, DHS made its decision to reinstate Casas's removal order first, and then gave Casas notice either one day or six months late—an inversion of the procedure ordinarily requiring notice to a noncitizen before a final decision is rendered. *See* 8 C.F.R. § 241.8. The large notice section at the top of the form is dated a day after the decision to reinstate, so DHS purportedly provided Casas with the notice of its intent to reinstate

the order at that time. But the middle section of the form shows that Casas acknowledged receipt of the notice six months after the decision to reinstate the order was made—suggesting that Casas may not have even seen the form until then. Further, in her acknowledgment, Casas did not indicate whether she wanted to make a statement contesting the determination.

After reinstating the prior removal order, DHS released Casas on supervision. For seven years, Casas remained on supervision in the United States. Then in March 2020, when Casas appeared at an Immigration and Customs Enforcement office for a routine check-in, DHS detained her. After she was detained, Casas requested a reasonable-fear interview.

At her interview with an asylum officer, Casas stated that unknown individuals kidnapped her stepfather and uncle, who were on duty police officers, for unknown reasons in 2013 or 2014. The police took a report of the kidnappings, and the investigation is purportedly ongoing. Casas feared that she would be the victim of "reprisal[s]" or an act of "vengeance" by the same people. Casas's mother and sister still live in Mexico, afraid of these unknown persons as well. At one point, her sister went into hiding but has since emerged. Separately, Casas mentioned that her mother is a member of a group that advocates for disappeared people, which led to threats from someone unrelated to her stepfather and uncle's kidnappers.

The asylum officer determined that Casas had not shown a reasonable fear of persecution or torture. Casas sought

review by an IJ who, after hearing Casas testify to the same facts recounted above, affirmed the asylum officer's decision.[1]

## II

Casas's petition raises two arguments: (1) the reinstatement of her removal order was facially deficient and did not provide her a fair hearing under the Fifth Amendment; and (2) the IJ erred in rejecting her reasonable fear assertion. We take each argument in turn.

## A

In immigration cases, we review constitutional and legal issues de novo. *Meraz-Saucedo v. Rosen*, 986 F.3d 676, 684 (7th Cir. 2021). Noncitizens have due process rights in reinstatement proceedings under the Fifth Amendment. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). But when regulations provide a structure for proceedings, we analyze the government's actions for compliance with the regulations, rather than compliance with constitutional due process (unless the petitioner challenges the regulations themselves as deficient). *Silais v. Sessions*, 855 F.3d 736, 745 & n.6 (7th Cir. 2017) (cited omitted). In addition, the petitioner must show that any errors by the government in complying with the regulations resulted in prejudice. *Id.* at 745.

When someone reenters the United States without authorization after a prior removal, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5). In order to

---

[1] Because this was a negative decision from a reasonable-fear interview, there was no further appeal to the Board of Immigration Appeals available. 8 C.F.R. § 208.31(g)(1).

reinstate a removal order, the Government must: (1) determine the noncitizen "has been subject to a prior order of removal" and obtain a copy of the order; (2) confirm the identity of the noncitizen; and (3) determine whether the noncitizen "unlawfully reentered the United States." 8 C.F.R. § 241.8(a)(1)–(3). Once the Government has made its determination, it must provide written notice and give the noncitizen an opportunity to provide "a written or oral statement contesting the determination." 8 C.F.R. § 241.8(b). Only after the noncitizen is given notice and an opportunity to respond may DHS reinstate the removal order. 8 C.F.R. § 241.8(c); *Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2282 (2021).

Casas argues that DHS's decision to reinstate her prior removal order was facially deficient because it predated the notice to her by a full day at least, which shows that DHS decided the removal order *before* it ever gave her notice or an opportunity to respond. She also notes that her acknowledgment was not dated until nearly six months later, which further suggests that she was never given an opportunity to respond before DHS decided to reinstate the removal order. Because of these deficiencies, Casas argues that she was not provided a fair hearing in violation of her due process rights under the Fifth Amendment, and the government's failure to follow its own regulations is inherently prejudicial.

The government concedes the facial deficiencies on the Form I-871 Casas received. But Casas cannot prevail because she does not provide any evidence of prejudice. Although she argues for a presumption of prejudice based on the deficient Form I-871, our case law is clear that noncitizens must "produce some concrete evidence indicating that the violation of a procedural protection actually had the potential for affecting

the outcome." *Silais*, 855 F.3d at 745 (citation omitted). Casas does not point to anything that would suggest that the outcome of her reasonable-fear interview would have been different had the government complied with its regulations. As far as we can tell, DHS's failure to provide adequate notice before reinstating the removal order had no effect on the outcome of Casas's case: she chose not to contest the findings of the reinstatement, and she was able to request and participate in a reasonable-fear interview, the outcome of which an IJ later reviewed.

**B**

Casas's second argument challenges the IJ's decision that she did not establish a reasonable fear of persecution or torture. We must first address the standard of review for this type of claim, as our circuit has not established one.

Negative decisions from a reasonable-fear interview are distinct from a denial of asylum or other immigration relief on the merits, which courts review for substantial evidence. *Meraz-Saucedo*, 986 F.3d at 684–85; *see W.G.A. v. Sessions*, 900 F.3d 957, 965 (7th Cir. 2018). Reasonable-fear interviews are preliminary screening examinations conducted by an asylum officer and reviewed by an IJ. 8 C.F.R. §§ 208.31(b)–(c), (g), 241.8(e). Only after an asylum officer determines that the individual has a reasonable fear of persecution or torture can the individual pursue the merits of their claim before an IJ. 8 C.F.R. § 208.31(e).

The government suggests that the proper standard of review for a negative decision out of a reasonable-fear interview is the substantial evidence test. *See Romero v. Att'y Gen.*, 972 F.3d 334, 340 (3d Cir. 2020) (applying substantial evidence

review to reasonable fear determination and rejecting the government's proposed "facially legitimate and bona fide reason" standard); *Andrade-Garcia v. Lynch*, 828 F.3d 829, 833–34 (9th Cir. 2016) (same). The substantial evidence test is a "deferential" standard that requires "reversal only if the evidence compels a different result." *Meraz-Saucedo*, 986 F.3d at 684. Casas does not offer a competing view, so we assume without deciding that substantial evidence is the proper standard for negative decisions of reasonable-fear interviews.

To establish a "reasonable fear of persecution or torture," Casas needed to show a reasonable possibility that she would be tortured or face persecution in Mexico on account of her "race, religion, nationality, membership in a particular social group or political opinion." 8 C.F.R. § 208.31(c). Family membership can be grounds for a reasonable fear, but there must still be "a causal link between family membership and the persecution" beyond a family member's experience of harm. *Meraz-Saucedo*, 986 F.3d at 685; *see W.G.A.*, 900 F.3d at 965.

The evidence before the asylum officer and the IJ was threadbare on the nexus between her family membership and a fear of persecution. Even before our court, Casas fails to explain the nexus. Casas could not identify the kidnappers, and the record does not indicate if they targeted her stepfather and uncle for a particular reason or no reason at all. And while Casas stated that she feared that she would be the victim of "reprisal[s]" or an act of "vengeance" by the kidnappers, she does not provide any evidence that the kidnappers have ever or would ever target her. At most, she noted that her sister went into hiding at some point for some unclear reason, but she no longer is. Without more information about who these individuals were, why they targeted her family, and why she

feared they would also target her, the IJ's finding that Casas was unlikely to be persecuted on account of her family membership was based on substantial evidence.

### III

Because we cannot locate any prejudice in procedure or error in the IJ's reasonable fear determination, we DENY Casas's petition for review.